IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFF WAGNER,

                          Plaintiff,

        v.                                                OPINION and ORDER

JOHN IFEDIORA,                                            23-cv-511-jdp

                          Defendant.

---

Plaintiff Jeff Wagner brings state-law fraud, breach of contract, and conversion claims against defendant John Ifediora. Dkt. 4. Wagner proceeds pro se, but he is an attorney admitted to practice in Michigan.

Because Wagner proceeds without prepaying the filing fee, I must screen the amended complaint under 28 U.S.C. § 1915(e)(2)(B) and dismiss any part of it that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Wagner's allegations as true and construe them generously, holding the amended complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I may also consider documents that the amended complaint incorporates by reference. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). I need not accept the amended complaint's allegations as true if incorporated documents directly contradict them. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

Wagner and Ifediora were defendants in a previous case in this court. *See Aboloma v. U.S. Foods & Pharm., LLC et al.*, 19-cv-418-jdp. In that case, Osita Aboloma, a Nigerian citizen, alleged that he was seeking permanent resident status in the United States through the EB-5

program, which offers visas for immigrants who invest in new commercial enterprises that create at least ten new jobs. Dkt. 48 in the '418 case, at 2. Aboloma alleged that defendants conspired to defraud him of a $550,000 investment that he made in connection with his visa application. *Id.* at 1. Aboloma settled that case with all defendants. Wagner then sued Ifediora in the Eastern District of Michigan based on similar allegations, but that case was dismissed for lack of personal jurisdiction.

In this case, Wagner alleges five claims and seeks damages of more than $200,000. But Wagner has stated a claim only for conversion, and it's implausible that he could recover more than $57,000 on that claim. But because his allegations suggest that he might be able to plead claims entitling him to more than $75,000, I will give him a chance to amend his complaint.

FACTUAL ALLEGATIONS

In 2011, Wagner obtained approval from U.S. Citizenship and Immigration Services (USCIS) to operate the Detroit Immigrant Investor Regional Center. The Regional Center's focus was offering EB-5-compliant opportunities to make capital investments in new commercial enterprises. In June 2014, Wagner created an offering for United Foods and Pharmaceuticals, a Wisconsin corporation, to solicit EB-5 investors for a project to relocate part of its business to Detroit. Ifediora proposed to United Foods CEO Rajan Vembu that they locate Nigerian investors seeking United States citizenship through the EB-5 program. Defendant John Ifediora, a former attorney, identified Aboloma, Ifediora's first cousin, as an investor, falsely stating that Ifediora was licensed in Wisconsin and would be Aboloma's attorney. Wagner began preparing Aboloma's visa application. Wagner alleges that his fees were $57,000.

2

In October 2024, Aboloma and United Foods agreed that Aboloma would become an investor in United Foods. Dkt. 4-5 at 1–5. The agreement states that the full investment was $500,000, plus a processing fee of $57,000. *Id.* at 3. Ifediora initialed each page of the agreement. On its face, the agreement doesn't make Wagner a party to it. *See id.* at 1–5.

Ifediora had Aboloma write two checks: one for $500,000 to United Foods and one for $50,000, which Aboloma left blank. Ifediora stated that he would pay the other $7,000 to Wagner. Ifediora wrote the $50,000 to himself and deposited it in his personal account.

After Aboloma made the $500,000 investment, Ifediora demanded that Vembu write him a check for $200,000, which Ifediora said he would escrow. Ifediora promised to use the $200,000 to market the project to other investors, but he used it to market his own trade show. Ifediora concealed his misuse of the $200,000 from Aboloma, United Foods, and Wagner.

After Wagner completed the documents for Aboloma's visa application, Ifediora told him that he forgot to tell Aboloma about Wagner's fees. Ifediora orally contracted with Wagner to "immediately bring three more investors into" the Regional Center, "who would be informed of the fees," and who would pay Wagner. Those investors didn't materialize. Ifediora never paid Wagner any of the $57,000.

In January 2018, USCIS denied Aboloma's visa application because, among other things: (1) it had terminated the Regional Center's participation in the EB-5 program; and (2) the evidence failed to show that the new commercial enterprise would create at least ten full-time jobs. *See* Dkt. 4-6 at 5–8.

Wagner allegedly learned of the factual basis for his claims when Ifediora filed an answer in case number 19-cv-418-jdp. In relevant part, Ifediora stated that some of the $50,000 that

Aboloma paid was for the Regional Center's attorney fees. Ifediora's law license was revoked based on conduct underlying this case and Aboloma's federal lawsuit.

## ANALYSIS

### A.  Intentional misrepresentation

"Under Wisconsin law, a claim for fraud has five elements: (1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment." *Land's End, Inc. v. Remy*, 447 F. Supp. 2d 941, 952 (W.D. Wis. 2006); *see also Doe v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 50 n.10 ("We use 'intentional misrepresentation,' and 'fraudulent misrepresentation,' and 'fraud' interchangeably." (alteration adopted)).

Plaintiffs must plead fraud claims "with particularity," meaning that their allegations "must specify the particular individuals who made the representations and the details of where and when the misrepresentations were made, and who the misrepresentations were made to." *Doe*, 2005 WI 123, ¶ 52; *see also* Fed. R. Civ. P. 9(b). Rule 9(b) requires the plaintiff to allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016).

Wagner alleges that Ifediora falsely told him that he was Aboloma's attorney to convince him to prepare Aboloma's visa application but failed to pay him $57,000 when he completed it. But Wagner hasn't specified when or where Ifediora made this statement or how

he communicated it to him. The amended complaint suggests that Ifediora made this statement between June and October 2014, but that four-month time frame isn't specific enough to state a fraud claim. Wagner also alleges that Ifediora falsely stated that he would bring three more investors into the Regional Center, for each of whom he would pay Wagner $57,000. But, again, Wagner hasn't alleged when or where Ifediora made this statement or how he communicated it to him. The allegation that Ifediora made this statement orally isn't enough to specify the method of communication; people can make oral statements using different means. Wagner alleges that Ifediora made this statement before he learned that Ifediora received a check from Aboloma and used it for personal purposes. But that allegation hardly provides a specific timeline. I will not allow Wagner to proceed on an intentional misrepresentation claim.

**B.  Fraudulent concealment**

Wagner's fraudulent concealment claim is a variation of his fraud claim. *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 12. But, as explained above, Wagner hasn't pleaded with particularity his allegations that Ifediora falsely stated that: (1) he was Aboloma's attorney to convince Wagner to prepare Aboloma's visa application; and (2) he would bring three more investors into the Regional Center. So, without more, those allegations wouldn't support a fraudulent concealment claim.

Wagner suggests that his fraudulent concealment claim is distinct from his fraud claim because: (1) Ifediora concealed the fact that Aboloma wrote Wagner a $50,000 check to cover his fees to prepare the visa application; and (2) Wagner couldn't discover this failure to disclose until Ifediora filed his answer in Aboloma's federal lawsuit. Minimally, to state a claim, Wagner must allege that Ifediora intentionally concealed a fact that he had a duty to disclose, and that

5

his failure to disclose the fact "induced [Wagner] to act to his injury." *See Laehn Coal & Wood Co. v. Koehler*, 267 Wis. 297, 300–01 (1954). But Wagner alleges that he "immediately" started preparing Aboloma's visa application after Ifediora stated that he was his attorney to convince him to provide that service. So, Wagner's allegations don't plausibly suggest that Ifediora's failure to disclose Aboloma's $50,000 payment induced him to provide this service. Wagner's other allegations relate to Ifediora's unfulfilled promise to locate three more investors and add nothing to this claim. I will not allow Wagner to proceed on a fraudulent concealment claim.

## C. Breach of contract

To state a breach of contract claim under Wisconsin law, Wagner must allege "a valid contract that the defendant breached and damages flowing from that breach." *See Matthews v. Wisconsin Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008). An enforceable contract has three elements: "an offer, an acceptance, and consideration." *Carroll v. Stryker Corp.*, 670 F. Supp. 2d 891, 898 (W.D. Wis. 2009). Both an offer and acceptance may be made orally. *Id.* An oral contract is binding and enforceable only if "the basic contract terms and requirements are definite and certain." *Ziolkowski v. Caterpillar Inc.*, 996 F.2d 1220, at *2 (7th Cir. 1993).

Wagner alleges that: (1) Ifediora promised to bring three more investors into the Regional Center, for each of whom he would pay Wagner $57,000; and (2) in exchange for that promise, Wagner agreed to continue working on Aboloma's visa application. But other allegations in the amended complaint suggest that Ifediora completed the visa application before Ifediora made his alleged promise to locate three more investors.

I need not resolve this potential inconsistency because, even if Wagner's allegations stated breach of contract claim, it would be untimely. The statute of limitations is ordinarily

6

an affirmative defense, but a district court may, on its own initiative, dismiss a claim that is clearly time-barred. *Robinson v. Sommers*, No. 23-cv-640-jdp, 2023 WL 6927286, at *1 (W.D. Wis. Oct. 19, 2023).

Under Wis. Stat. § 894.43, "a contract cause of action accrues at the moment the contract is breached, regardless of whether the injured party knew or should have known that the breach occurred." *CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp.*, 174 Wis. 2d 604, 607 (1993). Wagner doesn't expressly allege when Ifediora breached this alleged contract, but it's clear from the amended complaint that the breach must have occurred by September 30, 2016. Because USCIS terminated its participation with the Regional Center on that date, Ifediora could no longer have brought three investors into the Regional Center, as Wagner alleges he promised. *See* Dkt. 4-6 at 5. Wagner filed this action nearly seven years later, so this claim is untimely.

Wagner requests tolling based on Ifediora's alleged misconduct and other considerations. In Wisconsin, "equitable estoppel is based upon the fraudulent or other wrongful conduct on the part of the party asserting the statute of limitations and upon the detrimental reliance on such fraudulent or wrongful conduct by the aggrieved party." *Hester v. Williams*, 117 Wis. 2d 634, 644 (1984). Courts must ask "whether the conduct and representations of [the defendant] were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions." *Id.* at 645. Furthermore, while case law on Wisconsin equitable tolling is sparse, I have held that it is available only when the failure to meet a filing deadline is out of the party's control or occurred despite the party's due diligence. *Coleman v. Messman*, No. 13-cv-566-jdp, 2014 WL 4678264, at *3 (W.D. Wis. Sept. 18, 2014).

Wagner hasn't alleged a plausible basis to toll the statute of limitations on his breach of contract claim. Wagner alleges that he didn't learn the "true nature of Ifediora's malfeasance until late 2019," after he answered in the previous action in this court. Again, it's clear that Wagner would have realized by the end of September 2016 that Ifediora could not keep his end of the bargain. Wagner might have learned aspects of Ifediora's alleged misconduct after that, but those later discoveries don't justify Wagner's failure to pursue a claim whose basis he knew about well before then.

Wagner contends that he's entitled to equitable tolling from the time he filed his lawsuit in the Eastern District of Michigan until that court dismissed it for lack of personal jurisdiction. But Wagner hasn't alleged any fraudulent conduct by Ifediora that led him to bring a lawsuit there instead of this district. Wagner simply made a legal mistake, which doesn't warrant equitable tolling. *See Williams v. Sims*, 390 F.3d 958, 963 (7th Cir. 2004) ("[E]ven reasonable mistakes of law are not a basis for equitable tolling," and this rule "has been applied repeatedly to pro se [litigants]."); *Schmidt v. Wisconsin Div. of Vocational Rehab.*, 502 F. App'x 612, 614 (7th Cir. 2013) ("[M]istakes of law (even by plaintiffs proceeding pro se) generally do not excuse compliance with deadlines or warrant tolling a statute of limitations."). Because it is clearly time-barred, I will not allow Wagner to proceed on his breach of contract claim.

**D. Conversion**

To state a conversion claim, Wagner must allege that Ifediora intentionally controlled or took his property (which includes money) without his consent, and that this control or taking seriously interfered with his right to possess the property. *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 773 (7th Cir. 2013). A person who diverts money belonging to a second

person and owed by the second person to a third person can be liable to the third person for conversion. *Methodist Manor of Waukesha, Inc. v. Martin*, 2002 WI App 130, ¶ 7.

Wagner alleges that Ifediora promised to pay him $57,000 to prepare Aboloma's visa application. After Aboloma wrote Ifediora a check for $50,000, Wagner continues, Ifediora deposited the check into his personal account and failed to pay him any of the $57,000 fee. Wagner's allegations suggest that Ifediora agreed to pay him a part of the $57,000 processing fee that the agreement mentions but took, without Wagner's consent, the money that Aboloma gave Ifediora toward that fee and used it on himself. These allegations are enough to state a conversion claim.

The amended complaint leaves some uncertainty about whether Ifediora agreed to pay Wagner the full $57,000. Wagner alleges that Ifediora made that promise, but the incorporated documents (including the agreement itself) suggest that the fee was for more than one purpose. But this lack of certainty doesn't preclude a conversion claim; I can infer that Ifediora agreed to use at least some of the $57,000 to pay Wager for his services. *Cf. Hauschildt v. Beneficial Wisconsin, Inc.*, No. 03-C-0235-C, 2003 WL 23289788, at *5 (W.D. Wis. Dec. 17, 2003) ("[P]laintiffs' failure to identify a specific and identifiable quantity of currency as the subject of their conversion claim will not prevent their claim from going forward."). Wagner has stated a claim for conversion.

## E.  Tortious interference with economic advantage

Wagner alternatively refers to this claim as "tortious interference with economic advantage" and "tortious interference with prospective economic advantage." Dkt. 4 at 19.

Wisconsin recognizes a cause of action for "tortious interference with existing and prospective contractual relations." *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th

Cir. 1994). To state a claim for intentional interference with an existing or prospective contract, Wagner must allege that: (1) he had a contract or prospective contractual relationship with a third party; (2) Ifediora interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) Ifediora was not justified or privileged to interfere.

I will not allow Wagner to proceed on a claim for intentional interference with an existing contract because he hasn't identified a contract with a third party. If Wagner is alleging that he was a party to the agreement, the agreement itself contradicts that contention. *See also Wagner v. Ifediora*, No. 20-cv-12293, 2021 WL 3633578, at *4 (E.D. Mich. Aug. 17, 2021) (stating that the agreement is between "Mr. Aboloma, as an investor in U.S. Food & Pharmaceuticals, and Mr. Vembu as the president of the company"). Even if Ifediora was a party to the agreement as well, Wagner's allegations aren't enough to infer that it was "was entered into by the parties to the contract directly and primarily for his benefit." *See Goossen v. Est. of Standaert*, 189 Wis. 2d 237, 249 (Ct. App. 1994).

Nor has Wagner plausibly alleged the existence of a prospective contract with a third party. Wagner alleges that Ifediora's alleged misconduct caused USCIS to deny Aboloma's visa application, which contributed to the Regional Center's termination. This result, Wagner suggests, caused him to miss out on prospective contracts with other immigrant investors. But to succeed on this claim Wagner would have to show that "consummation of the prospective contract was reasonably probable." *Stepp v. Ford Motor Credit Co.*, 623 F. Supp. 583, 595 (E.D. Wis. 1985). Wagner doesn't include allegations suggesting a reasonably probable chance of contracts with other immigrant investors.

Also, there's no indication that Ifediora's alleged misuse of the $200,000 payment caused USCIS to deny Aboloma's visa application. USCIS didn't deny the visa application on that basis; it even stated that the application and supporting evidence "assert[ed]" that he invested $500,000 into United Foods. Dkt. 4-6 at 4. And it's unclear how USCIS's decision to deny Aboloma's visa application could have led to the termination of the Regional Center's participation in the EB-5 program; the termination occurred before the denial of Aboloma's application. In any case, Wagner's allegations aren't enough to infer that Ifediora "act[ed] with a purpose to interfere" with prospective contracts with other immigrant investors. *See Wis. Masons Health Care Fund v. Sid's Sealants, LLC*, No. 17-cv-28-jdp, 2017 WL 3835343, at *5 (W.D. Wis. Aug. 31, 2017). I will not allow Wagner to proceed on a claim for intentional interference with a prospective contract.

CONCLUSION

Wagner asserts only state-law claims and contends that the court should exercise diversity jurisdiction over these claims. District courts have subject matter jurisdiction over civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). Wagner alleges that he and Ifediora are citizens of different states. But his current complaint states only a conversion claim for up to $57,000, falling short of the matter-in-controversy requirement. He could amend his complaint to plead his intentional misrepresentation claim with particularity, but his damages for such a claim would be limited to the same $57,000 that is the subject of the conversion claim. Wagner states in his complaint that the "Wisconsin statute offers . . . possibly treble damages if certain criterial are met." Dkt. 4, at 9. But he does not assert claims under statutory provisions that

might allow for treble damages taking him over the $75,000 threshold. *See, e.g.*, Wis. Stat. § 100.18 ("Fraudulent representations"); § 895.446 ("Property damage or loss caused by crime; action for").

Because it is possible that Wagner could amend his complaint to state claims for relief surpassing the $75,000 threshold, I will give him a short time to submit an amended complaint. If Wagner fails to submit an amended complaint by the deadline below, I will dismiss the case for lack of subject matter jurisdiction.

ORDER

IT IS ORDERED that plaintiff may have until May 16, 2024, to submit an amended complaint.

Entered April 25, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

12